Good morning. May it please the court, I'm Cynthia Vargas, appearing on behalf of the Lake Elsinore Unified Sch. Dist. I'd like to preserve three minutes for rebuttal if I could, Your Honor. Roger. Time. Okay. Could you help me on something? I don't know if it probably isn't part of your argument, but I'm waiting if we should... I'm wondering if we should just wait for the Supreme Court decision. I think they've granted certain a case, End Race v. Douglas City or something like that. I don't know, Your Honor, that that case will apply, specifically because in this case the hearing... I'm sorry, the hearing officer definitely, but the district court as well, ruled that the student made appropriate progress, and the case that's pending before the U.S. Supreme Court has to do with whether or not... with the standard of whether or not a child made progress. The issue of progress is not being addressed in this case at all. It was not appealed by student. So the district court affirmed the administrative law judge's position that the student had made progress during the period of time that she was in the district's program. She made academic progress, independent progress... And the district court so found? She did. So this is about a procedural violation, whether there's a procedural violation. Correct, Your Honor, and in fact it's the second level of appeal, and although I can't appreciate the expertise of the district court, I do believe that she simply got it wrong in this case. First, the district court reached a conclusion on an issue that was never addressed during the due process hearing. Could you help me on another preliminary issue? I was very curious about the standard of review, because in these IDEA cases, the deference to the administrative law judge seems to be less than it usually is in cases where there's an administrative law judge and then a district court. And it made me wonder. I think the way it works, but you will actually know the way it works, is that when a child fits within the disabled child category, there is a bundle of federal money that goes to the public school if the public school is able to provide a free, appropriate public education, and it goes to the private school, often these specialty schools that take care of autistic children, if the public school can't. Is that the way it works? Is there a bundle of money so that as long as the ALJ and the school system show that the schools are accomplishing something, they keep the money, and if they don't, the private school gets the money? That is a very good and simplified version of exactly the way it works. So school districts, there is federal monies that are set aside for school districts to serve the needs of all different types of students with disabilities. And that money can be used to fund a non-public agency or non-public school where the school district is unable to offer a program that's appropriate for the child. That probably explains that standard review difference. Yes, yes. Standard review is a very important component here, but before we even get to that, I just wanted to point out that here the district court issued a ruling on a topic, an issue that was never presented during the complaint. It was not addressed during the due process hearing. It was not even rose on appeal. And, in fact, in students' reply brief in this appeal, she acknowledges the fact that that was not raised. Here was my concern about that. It looked as though the statute says the school is supposed to do a review once every three years. Correct. The parents can request a review sooner than that and did not in this case. I think that's your case, and you've got record to support it. Is that right? That is correct, Your Honor. What I was wondering was whether under the statute this child's condition was so bad that it would have been obvious to any school district acting in good faith that she should have had review earlier. This business of pulling out her hair, not being toilet trained when she's, what, 12, 13 years old, playing in the toilet, the violence. It looks like she really needs to be out of the public school. Why wouldn't the school just undertake sua sponte, its own review? Your Honor, it goes right to the heart of this case. In fact, this student, Ms. M.S., has engaged in very severe behavior. She has done so over many years. They were recognized before she was put into the district's alternative educational program. So what's key here is to look at Ms. through a timeline, not in certain points, not in certain just looking at her behavior overall. And, unfortunately, what you are going to hear from counsel on the other side is a list of very extreme behaviors, some of which your Honor listed just now, and there are others as well. But when you look at Ms. through the timeline, you will see that those behaviors were cyclical, that they came and went, that the district had interventions in place, and they do believe that they were addressing those behaviors appropriately. And, in fact, the district's court's own decision recognized the fact that Ms. had made progress academically and behaviorally in the end. So if we look at the cycle, if we look at the history, we've got one point in time that's prior to the statute period, and that's August of 2010. There was an assessment conducted on student. It was a psychoeducational evaluation that included behavior and anxiety, both areas addressed by the district court. Is this the one by Dr. Patterson? That's correct, Your Honor. The district court recognized it. The party stipulated to the assessment. So that was stipulated in the due process hearing and accepted by the district court. As of January 2011, student was placed in the district's alternative program. At that time, she engaged in some very serious behaviors. She had aggressive behaviors. She had some self-injurious behaviors named by Your Honor earlier. She would pull at her hair, pull out her hair. She was dunking herself and her clothing in the toilet, and she had other maladaptive behaviors that are consistent with autism. Because of those behaviors, the district contracted with and funded the services of the Center for Autism-Related Disorders. That's a non-public agency that specializes in working with students with autism. CARD is who they're also known as. So CARD is well-known, well-recognized in the community for providing what's called applied behavior analysis interventions. Through those interventions, if you look to the record, by May of 2011, the end of the school year, all of MS's behaviors had significantly decreased. And in fact, CARD stopped tracking aggression altogether. This is in the ALJ's decision. When is this now? That's as of May of 2011. At that point, the school year ended, and MS was then on summer break. Although she had the opportunity to, she did not attend a district program during the summer break. She continued to get some CARD services during that time, but they were less than what she would get if she had been in the school setting. Her behaviors increased significantly during the summer. As of September 2011, when she returned to school, Maeve's behaviors were high. They had gone back up, and she was engaging in aggression. She was not pulling out her hair at that time. But as was the case in previous years, and understand at that time Maeve was 11 years old. She had been in the district since she was 3. The district was very familiar with her cycles, and that upon return from a break, she routinely had an escalation in behavior. As a result of that escalation, new CARD goals were put into place. Interventions were modified. By the end of September, and certainly into October, those behaviors had significantly decreased. By November, CARD again was not tracking the aggressive behavior because she wasn't engaging in it. She got through the remainder of the calendar year, taking her to the end of 2011. Then she went on winter break. In Lake Elsinore, the winter break is 3 weeks long as opposed to 2. It's quite a long break for a child with MS' needs. When she came back from winter break, as is often the case with her, as was the case in September, her behaviors increased again. They were again high. Again, the interventions were modified, and we did see a return of the pulling out her hair at that time. But by March 9, 2012, that behavior completely ceased. It was stopped again. It wasn't happening in the school at all. So she was doing well and starting to make really good academic progress, which was recognized by the district court. And then sometime in April, the district started to see an increase in her aggressive behaviors again and other maladaptive behaviors. She was screeching more, and she was making loud vocal outbursts. That's towards the end of April. The district held an IEP team meeting on May 8, 2012. The beginning of the increase of her behaviors were acknowledged, and new goals were written, and interventions were modified. By June, the very beginning, her behaviors continued to escalate, and by the beginning of June, she was removed from the district. In July 2012, the district held an IEP team meeting. If I could step back for just a second, the parents notified the district that they intended to pull MS out of school, unilaterally place her in a non-public school, and seek reimbursement from the district. The district did not believe that its program was inappropriate for her. They had been able to meet her needs. They understood her behaviors. I thought it found that it couldn't meet her needs and removed her from the district in June. That's not exactly the way it happened. Parents removed her in June. An IEP team meeting was held in July, where there was a discussion about the fact that it was unusual, considering MS's typical cycle, for her to have an increase in negative behaviors at the end of the school year. Those typically happened at the beginning of a school year. So what the school district did was to recommend, the IEP team recommended that an FAA be conducted, a functional analysis of MS. I keep falling behind your argument, because I'm trying to remember what the acronym is. In May 2012, according to my notes, the parents did ask for a reassessment of the student. Isn't that correct? That is correct. That's the first time during the applicable period of time that the parents asked for an assessment, but they did not ask for a functional analysis assessment. What they asked for were new, independent educational evaluations. But the problem with their request is the district had already funded independent educational evaluations for students. The first one being in August of 2010, that I started with today. And then in 2011, the district funded an IEE, Independent Educational Evaluation, of speech, and another one in OT. And then in May of 2012, student requests new independent educational evaluations. That request was denied, because the district had already funded independent evaluations. In July 2012, when they met, they talked about the fact that it was unusual that her behavior increased in April. And perhaps it was time to do a functional analysis assessment and determine whether the interventions were no longer working. Not they had already determined they weren't, but to determine whether there was something different going on. Hold on, I'm confused about something. The parents did request some kind of re-evaluation in May, but it was the wrong kind, May of 2012. Correct. Have I got that right? You do have that correct, yes. Now, what is the kind they asked for, and what's the kind they didn't ask for? What's the difference? Okay. I'd like to first just take one step back. I'm going to answer your question, absolutely. But the district court read the facts to say that the parents had repeatedly, numerously asked for assessments in the area of behavior, which is incorrect, inconsistent with the record, inconsistent with the ALJ's decision. I want to point that out. In May of 2012, what they asked for were independent evaluations in the area of psychoeducation, which includes cognition, motor development, academics, social-emotional functioning. That includes behavior. That's part of it. That's part of what Dr. Patterson had done in 2012. They also asked for an IEE speech assessment and an IEE OT assessment. They did not ask for a functional analysis assessment. What's the difference? A functional analysis assessment is focused on a child's behavior solely. You're not looking at the child as a whole. You're looking strictly at the child's behaviors, and you're determining whether or not there is a particular function to the child's behavior and determining what interventions are appropriate. To a layman, this would just be a bunch of jargon that all means roughly the same thing. Take another look at the kid. I know, but that's one of the reasons why this court and the U.S. Supreme Court have recognized, and when looking at the standard of review for a reviewing court, have recognized the complexity of IEP development and the assessment process. Because to a layperson, it does look like one thing, but in actuality and in practice, it's very different. What it sounds like is the kid was doing worse at the end of the school year. That was kind of unusual. The parents had taken another look at the kid, see if the program's working out, and the school said no. The school district denied their request for an independent evaluation but offered them an assessment through the district. So they didn't just say no. They figured it would be a whitewash because the district loses the money if it says we're doing an inadequate job. I'm sorry, I don't understand that. Well, the parents wanted an independent assessment. Correct. So it would be independent. Correct. But under the law, a parent is entitled to an independent evaluation when they disagree with an assessment conducted by the district. Oh, I see. You're saying when parents say the kid's been doing badly, take another look, first the school district takes its look, and only then can the parents demand an independent look. That is correct, Your Honor. I understand. You've run out of time. We'll give you a minute for a rebuttal. Okay, great. Thank you. Good morning, Your Honors. Tanya Whiteleather appearing for plaintiff and appellee. May it please the Court. I think the record is very full of all of the behavioral issues that MS had from 2010, from the time that Dr. Robert Patterson indicated she had aggressive behaviors. There are two things that bother me about your side of the argument. I'd like to give you a chance to deal with them. One is not asking for the proper kind of assessment that you're entitled to ask for within a three-year interval. And the other one is when they tell you we'd like to meet with you, here are four dates we could do it, and there's no response. So the failure to include the parents in the team is not the school's fault. They tried to arrange for the parents to meet with the team and be part of the team, and the parents didn't respond. Could you help with those two things? I will. The very first one, not asking for the proper assessment. The burden to assess is on the school district, the local educational agency. So you conceded in the brief that the parents did not request a reassessment. They requested a behavior, i.e. What you said in the brief was that you didn't request a reassessment, I think. You didn't make a distinction between types, if I remember right. The term reassessment was being used. District court correctly notes that the parents did not request that the district assess MS' behavior. And I don't think you argue that they had made some different sort of request. They had made an IEE request because the district had failed. Is that in your brief or you're just telling me that now? Yes, it is. That the district had failed to conduct an assessment, and when the district fails to do so, when it has a reason to do so. But you say you didn't request them to do it. The district, the parents requested a behavior assessment with an IEE, based on the fact that the district had not done what it was required to do. And, well, I didn't see that second part. But all I saw was that they had requested an IEE and then went ahead and did one independently with Dr. Morris, I think is what the record shows. Is that correct? And then, is that correct? I'm sorry, your question again, Your Honor? That the parents hired a doctor to do an IEE, an independent assessment. Is that right? That is correct, and they had previously made a request at the IEP, which is documented on May 8th of 2012, that they wanted psychoeducational and cognition, and it wasn't all one part, and behavior. So then what, in your concession, what does that mean? District correctly notes that the parents did not request that the district assess MS's behavior. So how should I understand that? Meaning that they had waited and attempted to address behavior at the IEP team meetings, and the district told them again and again that they were doing assessments through CARD. That's even in the brief, the reply brief. They were doing ongoing assessments. The parents, having been told that there were behavior assessments being conducted by the district, and the district court did note that. As the district claimed it was doing assessments daily, the parents said we would like independent educational evaluations, because you're doing assessments, that's our right. So opposing counsel says there's a difference between the sort of assessment that's contemplated in Section 14, I guess it is, and these educational evaluations. Is that incorrect? I think that's incorrect. Okay, what's the basis for that? What's the basis for that? There is no, every state is different. If a parent walks in and says I'd want an assessment in the area of behavior, Congress and IDA don't require the parent to be the sophisticated person to know that we're going to call this a functional analysis assessment. But you conceded that you didn't request that the district do an assessment. That's what confuses me. I mean, the district argues parents didn't request that the district make any assessment, nor did the school or the teachers request that. So the 1414 was not triggered. And you concede that in this footnote. So I'm not understanding now. When a district fails to do its duty and to conduct an assessment. Well, did it fail to do its duty? It was doing one every three years, and nobody, including the parent, requested an additional assessment. Until May 8, 2012, when the parent said, out of frustration, at the IEP team meeting, there's been no assessment, I would like to have an independent educational assessment, the district had not done one, and the district had insisted it had been doing assessments. So you're saying, do I understand your argument that contrary to your footnote, the parents implicitly requested, or it should have been understood that they were requesting the sort of assessment required under 1414. Is that what you're saying? No, no, I'm sorry to be confusing. Well, then I don't understand. Okay. There is a triennial that every district is required to do unless it's waived by the parties. That's under 1414, right? That's under 1414. That's a particular type of assessment? You have to recognize that we're not IDEA experts here. It is a triennial assessment that is to reassess the student in all areas of suspected disability. So they don't call it an assessment. They say, educational or related services needs, including improved academic achievement and functional performance of the child warrants a re-evaluation. So a specific sort of re-evaluation that's required every three years, or upon request by a parent or teacher, or if the local educational agency thinks an additional one is required. And as I understand it, the district says parents never requested that sort of evaluation, and they didn't, nor did a teacher, and so there was no requirement to do one. Except that the facts establish, and as the district court very clearly noted, and let me step back a minute, this court has indicated evaluations and assessments mean the same. So hopefully that will clear that out. They are interpreted to be the same by the court. The parents have been told, and it's in the record and it's in the briefing, that the district was doing assessments constantly, daily, in behavior, by card. There was never a required assessment report. There was never any consent, which is required under the California Education Code, to a formal behavior assessment. But the parents were told again and again, this is being done. We are doing assessments every day. And so the district still takes this position, so I'm not sure how that changes the analysis. They should have conducted a formal assessment. So the parents should not have to request it. That's our position. So that's not what the statute says. In fact, the statute used to say, or if conditions warrant. That was removed by Congress. So there's no and if conditions warrant requirement now for that sort of reevaluation. Well, when the district should have assessed, and there had never once, this is one of the things I think. Let me make sure. I thought I had this, but now I'm confused again. So I want to make sure that I understand your position. And just for ease of discussion, I'm going to call it the 1414 evaluation. There was an evaluation done that was adequate, right, in 2010. We would disagree with that, but there was an evaluation done in 2010. I didn't see a challenge to the adequacy of that, so let's assume that that was adequate. And then the statute says it has to be done at least once every three years, unless the district determines there's a need for reevaluation or the parents ask for it. I thought from reading the brief, the same as Judge Ikuda, that there was a concession that the parents did not ask for 1414 reevaluation. Do I take it that your argument today is that, yes, the parents did not ask for it, but they didn't ask for it because they thought the district had been doing ongoing evaluation, so somehow that's a violation of the statute? Yes. All right, so I have your argument correct. Yes. And how is it a violation of the statute if there's no specific request, when the district fails to, assuming for the sake of argument, conduct this ongoing evaluation that they had purportedly represented? The burden is never on the parent to do the assessment or to identify the areas of need or to begin the assessment. The 2010 assessment did not include a behavioral assessment. It did not include an assessment of anxiety. There were portions of the test of the psycho-ed, which is a very general oversight of the student, that mentioned anxiety and aggression. They were identified in there, but it wasn't a full formal assessment of behavior, and it was not a full formal assessment of anxiety. I want to make sure I understand this. I'm having the same experience as Judge Nguyen, getting more confused instead of less. The statute says re-evaluation rather than assessment, and that's a word I understand. So let me ask in those terms. The parents didn't ask for re-evaluation because they thought, and the district told them, that it was re-evaluating every day. Correct. It would seem kind of obvious to me as formerly a parent of a young child that that would mean a teacher just has a little card or a line or checklist to mark off, kid did okay today, kid pulled their hair out today, whatever. That's a different thing from evaluating whether the kid's getting the free appropriate public education. The card data collection, if this helps, is part of what a formal behavior functional analysis is. There is data collection collected, and what the parents were told was that it was being used to do a sort of a functional analysis. Again, it's in their reply brief. They were doing this assessment, that it was being done on a daily basis with daily records, and that somebody from CARD, I believe it was Ms. Martinez was the supervisor, was overseeing that and doing that assessment. The parents are not attorneys. They're not special education teachers. They believed when the district said, we're doing these assessments every day. We are doing, we don't need to do these. We're doing these. And the parents, using their right under 300.502, said, okay, you're doing an assessment. We'd like the IEEs because you're doing this. We have a right to do this. The district never funded. Where should I look in the record to see exactly what it is that the parents asked for and when they asked for it within the three-year period? What's the excerpt reference? That would be the 5-8-12 IEP. 5-what? May 8, 2012 IEP. I was hoping for a page. I'm not going to read through all this stuff to find your part of the record. Okay, I will find that. I have that noted. I think the reference to it. If you're talking about the administrative law judge's decision, it goes on forever, single spaces, I recall. I will step back and find that in a minute if that may do that. And may I answer the other question as well now? The other one you had was about four days, no response. The parents have had a number of health issues and are dealing, the sole parents, of a very difficult child with autism. And there was a response by the parents. Those days won't work. The school district said, get back to us. And the district said, if you don't get back to us by the 20th, I believe was the date, we'll hold the IEP without you. This is the issue that wasn't raised at any place along the line. And I think that's another concession that was made. So we send JW that we can't consider this sort of issue. So how is it that we could review it? It was used by the ALJ to say that the district had actually offered an assessment of behavior that the parents refused to even consider because they didn't go to this July 30th IEP or 31st. They had no notice of the IEP. That's the problem. If they had had notice and not gone, that would have been different. The ALJ said, it's the parent's fault. The district actually finally offered an assessment. But the parents didn't even get notice. The notice was for the 20th. So that's how it came about. They could never have attended that meeting because they didn't know when and where it was taking place. They were never given notice of when and where it would take place. Exactly. But the school district responds. The reason for that is that when we contacted them to work out a mutually convenient date, they weren't responsive. In fact, the school district told them it would take place on the 20th. They didn't hold it on the 20th. No, they didn't. The school district told them there are four dates that are good for us. One of them is the 20th. And then it held at the 30th, as I recall. They didn't give them notice. I'm sorry, my recollection is something different. I apologize. What's your recollection? You know the record better than I do. It's that they said, if you don't respond, we will hold it on the 20th. And I reviewed that in preparation for this hearing. Did the parents show up on the 20th? No, the parents did not. It was not even held. Nothing was held on the 20th. The district says it has other evidence that it would have raised had the claim, had the argument been made, but the argument was not made. And I think you can see that in the brief, that the argument was not made. Why would we have jurisdiction when we said in J.W. you have to raise those arguments? Because it was a finding by the ALJ. Why does that make a difference if you don't raise the argument? J.W. says you have to make the claims and exhaust those claims. And you didn't exhaust a claim. We didn't make a claim because it was irrelevant. And if the administrative law judge made a major error in the finding of fact, and that is to be reviewed by the district court. Thank you very much. Okay, we'll give you a minute for rebuttal. Thank you, Your Honors. Just to address that issue very, very quickly, the issue of the July 31st IEP. It was not raised in the complaint. It was not raised during the due process hearing. The district court, the ALJ, I apologize. The ALJ addressed it only briefly through the fact pattern. But she did not issue a ruling on that. It was not at issue. It wasn't even raised by student in her appeal. With regard to anxiety, the district court ruled that the district somehow failed to assess anxiety, even though the district court itself recognized that in Dr. Patterson's report in 2010, he had assessed anxiety and that the district had in place procedures and interventions to address anxiety. But then the district court went on to say that putting interventions in place are a response to an evaluation, not instead of an evaluation. Therefore, the district denied a FAPE. But the district court ignored the fact that they had assessed an anxiety. No request for an assessment in anxiety was made during the relevant time period. And then she wouldn't have been due for that assessment until 2013. So. Okay. I thank you for your argument. And the case of MSB Lake Elsinore is submitted.
judges: Kleinfeld, Ikuta, Nguyen